**SECOND DIVISION**
**ANDREWS, P. J.,**
**DILLARD and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 10, 2014

# In the Court of Appeals of Georgia

A14A0462. BETTIS v. THE STATE.

RAY, Judge.

A Richmond County jury found Roger Bettis guilty of two counts of aggravated assault (OCGA § 16-5-21), and one count each of criminal attempt to commit rape (OCGA § 16-4-1), kidnapping (OCGA § 16-5-40), and possession of a knife during the commission of a crime (OCGA § 16-11-106). He appeals from his convictions and the denial of his motion for new trial, contending (1) that the trial court erred in refusing to allow him to exercise his constitutional right to self-representation and (2) that his trial counsel was ineffective. For the reasons set forth below, we reverse.

Viewed in a light most favorable to the jury's verdict,[1] the evidence showed that on the evening of June 3, 2009, M. S. was beaten by an assailant while she was in the ladies' room at MCG Hospital in Augusta. M. S., whose husband was a patient at the hospital, went to the restroom on the fourth floor and entered a stall. Shortly thereafter, a man came into the bathroom, entered an adjacent stall, and climbed over the top of the stall and began choking M. S. The next thing M. S. remembered was a man's voice telling her that she was going to be okay.

During the assault, another woman, T. K., entered the bathroom. T. K. heard a sound like a woman moaning and then encountered a man whose pants were down and whose boxer shorts were exposed. The man pulled out a knife and, after threatening to cut her and kill her, backed T. K. into a stall and ordered her to shut the door and be quiet. After the man left, she sought help. In a pre-trial photographic lineup and then at trial, T. K. identified Bettis as the man she had seen in the bathroom.

As a result of the assault, M. S. lost several teeth and suffered a dislocated jaw, heavy bruising around her eyes, and a lacerated lip, among other injuries. In the ladies' bathroom, an investigator found a pool of blood and blood smears on the floor,

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

the toilet, the toilet tissue dispenser, and the walls of the stall. The investigator also recovered a pair of women's underwear "balled up and stuffed under the toilet bowl."

Using the hospital's surveillance video, police identified a suspect. Footage of the suspect, who was wearing a white T-shirt and "long black . . . shorts" was provided to the media. Two days following the incident, an anonymous telephone caller advised police that Bettis was the man in the video. Police then went to the residence where Bettis was staying and interviewed Bettis's mother, who told an investigator that Bettis was the man depicted in the video footage.

Police collected clothing from the bedroom where Bettis had been keeping his belongings, including a pair of shorts. Bettis's mother told the officers that the shorts belonged to Bettis and that he had worn them on the night of the attack. There were blood stains on the shorts. A forensic biologist with the Georgia Bureau of Investigation testified that the DNA found on the stains originated from M. S. or her identical twin.

1. Bettis contends that the trial court erred in summarily denying his constitutional right to self-representation without following the procedures contemplated by *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562)

3

(1975), and its progeny. The State argues that Bettis waived the right to represent himself. We are constrained to agree with Bettis.

Criminal defendants are guaranteed the right to self-representation under the federal and state constitutions. See id. at 819-820 (III) (A); *Seymour v. State*, 312 Ga. App. 462, 464 (1) (718 SE2d 354) (2011); Ga. Const. of 1983, Art. I, Sec. I, Par. XII. To represent himself or herself, a defendant must knowingly and intelligently waive the constitutional right to counsel. See *Faretta*, supra at 835 (V); *Lamar v. State,* 278 Ga. 150, 152 (1) (b) (598 SE2d 488) (2004). *Faretta* requires that the trial court "apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Citations and punctuation omitted.) *Lamar* at 152 (1) (b).

Further, to invoke the right of self representation, the defendant must "make an unequivocal assertion of his right to represent himself prior to the commencement of his trial."[2] *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990). Such a request "should be followed by a hearing to ensure that the defendant knowingly and

_____

[2] The defendant must also be mentally competent to waive the right to counsel, and "[t]he standard of mental competency to stand trial is the same as the standard of mental competency to waive the right to counsel." *Lamar*, supra at 151 (a). Neither Bettis nor the State suggest that Bettis was not mentally competent to waive his right to counsel.

intelligently waives the right to counsel and understands the disadvantages of self-representation." (Citation and punctuation omitted.) *Crutchfield v. State*, 269 Ga. App. 69, 71 (2) (603 SE2d 462) (2004).

The record shows that before the jury was selected, Bettis's trial lawyer, Amanda Morris, informed the trial court that "Mr. Bettis has requested to address the Court regarding his representation and I advised him that he does have the right to do so if he wishes."

The trial court asked to hear from Bettis, who stated:

MR. BETTIS: . . . . Sir, I'd like to ask to represent myself in my own business. I have not spoken to my lawyer, Ms. Morris, about four times only since she was – she got in contact with me the month of June of this year, of 2010. I only spoke to her this is like four times between the month of June and October. October – let me see, yesterday was the 17th, the first time I seen her in four months. Your Honor, we have not had time to prepare for a jury trial because I haven't had time to sit down and talk to her about what's in the evidence what's been brought forth what's in the case. At the same time, Your Honor – we're not prepared – ready for the case, Your Honor. Your Honor, I'd like to ask, Your Honor, to please consent to allowing me to represent myself.

After Bettis spoke, the trial court asked to hear from the prosecutor and from Morris.

5

The prosecutor stated that Bettis has "the right to represent himself. We certainly don't oppose that." Morris told the trial court that "if [Bettis] wants to represent himself I certainly won't object to that."

The trial court then ruled:

> THE COURT: All right. Well, I'll deny the request. I'll give Mr. Bettis the opportunity to, of course, participate with you as well as the other members of the public defender's office . . . . But it is a case while he may be entitled to represent himself it's always best to be represented by an attorney who is trained and experienced in these matters. And so I'll deny the request.

After the ruling, Bettis explained to the trial court that he was also asking to represent himself because his counsel, Morris, "had not been coming to see [him] . . . because she had been threatened by [the Sheriff]." Bettis further indicated that "they did not want me to reveal this . . . " The following exchange then occurred:

> THE COURT: . . . [O]f course when you testify you have the right to bring up matters within your defense, matters of concern and so forth. So you'll have that opportunity at the point in the trial when the Court goes over that with you to make that decision.
>
> BETTIS: I understand.

The State maintains that Bettis failed to make an unequivocal request to represent himself and so waived his right to self-representation. See *Danenberg v. State*, 291 Ga. 439, 441 (2) (729 SE2d 315) (2012) (finding that as appellant "sought to dismiss trial counsel and replace them with retained counsel, a public defender, or himself, appellant's communication was not an unequivocal assertion of his right to represent himself") (citation omitted). The State maintains that although Bettis "mentions" representing himself, his request was made in the context of expressing dissatisfaction with his attorney. Compare *Thaxton*, supra at 142 (2) (finding that appellant's remarks could be construed as an expression of dissatisfaction with his trial counsel, not an unequivocal assertion of the right to self-representation). The State also argues that when Bettis stated that "we're not prepared – ready for the case," he was stating that he was not able to represent himself. Further, the State contends that Bettis expressly waived his right to self-representation when he responded "I understand," after the trial court informed Bettis that if he testified he could "bring up matters . . . of concern" to the defense.

We find that the State's arguments lack merit. Bettis flatly requested that the trial court allow him to represent himself. The record shows, consistent with this request, that defense counsel, the prosecutor, and the trial court all understood that

7

Bettis had asserted his right to self-representation. After Bettis unequivocally asserted his right to self-representation, the trial court did not, consistent with the procedure set forth in *Faretta*, supra, apprise Bettis of the dangers and disadvantages of proceeding pro se. See *Lamar*, 278 Ga. at 152 (1) (b). Rather, the trial court summarily denied Bettis's request because "it's always best to be represented by an attorney who is trained and experienced in these matters." While we might agree with the trial court's opinion, whether it was best for Bettis to be represented by an attorney was of no consequence. The test of whether a defendant has validly waived his right to be represented by counsel "is not whether the accused is capable of good lawyering – but whether he knowingly and intelligently waives his right to counsel." *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998). See *Lamar*, supra at 153 (1) (b) (finding that trial court's inquiries were "irrelevant to an assessment of [the defendant's knowing exercise of the right to defend himself") (citation and punctuation omitted). Accordingly, because the record shows that Bettis "both wished to make and was mentally competent to make a knowing and intelligent waiver of his right to counsel, and the trial court employed the wrong standard for making this determination," the trial court erred. (Citation and punctuation omitted.) *Seymour*, supra at 465 (1).

8

2. The evidence at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that Bettis was guilty of each charge. Accordingly, the State may retry Bettis on the two counts of aggravated assault and on criminal attempt to commit rape, kidnapping, and possession of a knife during the commission of a crime. *Lamar*, supra at 153 (2).

3. In light of our holding in Division 1, Bettis's claims of ineffective assistance of counsel are moot.

*Judgment reversed. Andrews, P. J., and Dillard, J., concur.*